192164 Trimble Inc. v. PerDiemCo LLC Mr. Bagatelle May it please the Court, Dan Bagatelle on behalf of the Declaratory Judgment Plaintiffs and Appellants, Trimble and ISE. This appeal raises a personal jurisdiction issue that boils down to a due process clause issue. And that's because PerDiemCo undisputedly had the minimum contact necessary Mr. Bagatelle, I understand your argument about overruling Red Wing, but I'd like to start out by asking you if you think Red Wing is distinguishable from this case on the reasonableness prong. And if I read your brief correctly, your distinction appears to be that here there was a threat of suit, whereas that threat of suit did not exist in Red Wing. Am I correct in understanding your position? In part. I think there are a couple of distinctions. First of all, we know for sure that the contacts here were more extensive than in Red Wing Shoe. There were 22 over three and a half months. And we know that we have expressed threats to suit here. It's not clear to me exactly what the facts were in Red Wing Shoe. The court described them in several different ways. But we know that here we have more than simply a patent owner that's saying, here I am, and wouldn't you like to license my patent? They deliberately threatened two different related companies, and they specifically accused them of infringement and said they were going to take them to court. We think the facts here are actually more similar, or at least as similar to Jack Henry, because there were broad infringement allegations against multiple targets and repeated specific threats to sue. Why in the Red Wing should the number of communications or the threat to suit make a difference? Well, first of all, I mean, it's true that the Red Wing held that there were minimum contacts there. But if you look at Burger King, Burger King calls for a balancing of the minimum contacts. I don't understand what you're saying. We're not talking about minimum contacts, which I understand was conceded here, but about the reasonableness prong. Correct. But the reasonableness prong, should those facts, in other words, the multiple contacts and the threat of suit make a difference? Yes. And I think my point is not that there's a dispute over minimum contacts, but that the minimum contacts under Burger King are weighed against the reasonableness factors. And so you look at all of that together and determine whether it would be reasonable and fair to subject the declaratory judgment defendant, in this case, to suit. And we think in this case it is. And this is not a simple case, quite like Red Wing. It's more complicated. There are multiple defendants. As I said, I think this is really more similar to Jack Henry. And Jack Henry and Genetic Veterinary Services have both held that there is no bright-line rule, which is consistent with the Burger King case itself. There's no talismanic considerations, as Red Wing might be read to suggest. Well, I think Red Wing, too, did relate it to the facts. And I thought Jack Henry fairly clearly said that the facts need to be considered. That supports your argument. But it doesn't really look as if this is a matter of bright lines, but rather reasonableness. I fully agree with that, Your Honor. And, in fact, Per Diemco agrees that there's no bright-line rule. They're trying to say that Jack Henry was a good-faith case, or a bad-faith case, I should say. But I don't read Jack Henry to turn on the bad faith of the declaratory judgment defendant. Certainly, a bad faith would undermine any claim of unfairness or unreasonableness. But good faith doesn't confer immunity. And, again, Per Diemco's behavior here wasn't significantly different than the patent owner's behavior was in Jack Henry. Per Diemco tries to argue that there's some sort of a Hobson's choice, that they must either forgo relief, be hailed into a far-flung forum, or sue immediately. We're not suggesting that. If all you do is tell somebody that you own patent rights and you're offering those patent rights, you're not going to have either subject matter or personal jurisdiction because, first of all, there's no case in controversy. And, second of all, there wouldn't be purposeful direction towards the forum, which you need for minimum context and personal jurisdiction. And, second of all, they're not being forced into an inconvenient forum because they're entitled to, and did here, move to transfer under Section 1404. The problem was that they moved to transfer to the Eastern District of Texas, with which they had no real connection. They're arguing, essentially, that they can only be sued in the Eastern District of Texas, which is untenable. They operate out of D.C. and they have no constitutional right to be sued in their own favorite forum. They are, but nobody ever goes there. It's a one-man company. He's never been there. The office is locked and unused. All his activities towards the plaintiffs in this case were by telephone from Washington, D.C., and by letter from Washington, D.C. So, this is a company that basically chooses to litigate away. They don't want to litigate in D.C. In fact, after this case was dismissed, we filed a declaratory judgment action in the District of the District of Columbia, and they said there's no personal jurisdiction in D.C., which is just incredible to me. But more important for present purposes, we know that Per Diemco prefers to litigate away from home. They threatened to sue in both Iowa and Texas, and there's not much difference between Iowa and the Northern District of California. At most, it's an issue of degree, which could be dealt with by a motion to transfer, which, again, they filed, and the motion was denied because their presence there was in the district court's board. I thought they threatened to sue in Texas. I'm sorry, Your Honor? They said that they were going to sue in Texas? Yes. Originally, they were dealing with ISE, the subsidiary, and they threatened to sue ISE in the Northern District of Iowa. They attached a draft complaint. Then in discussions with Trimble's counsel, they threatened to sue Trimble, the parent company, a larger company, in the Eastern District of Texas. So they wanted to be away from home. This is a little bit unusual, I think, that you're not dealing with a patent owner that basically says it's inconvenient for me to go away from home. They're saying it's inconvenient for me to be away from the Eastern District of Texas, with which they have no real connection. At the end of the day, the district court erred by dismissing the case basically under a single consideration, the supposed privilege to threaten an infringement suit without subjecting yourself to jurisdiction where your target resides. We just think that's contrary to Burger King. Once you have minimum contacts that are established, you weigh those factors against the minimum contacts. You don't look at one particular mechanical test or talismanic consideration. The other side has argued that, well, you can look at, for example, whether you have a contract, and if a contract is not enough to establish minimum contacts, that may be, but we're not dealing with the minimum contacts prong, as Judge Teich pointed out. We're dealing with reasonableness, and in reasonableness, you can't just look at one factor. You have to look at all of them. The only factor where they have a significant argument is burden, and that argument is weak and was taken care of by their motion to transfer. So we would ask the court to reverse the remand for further proceedings in the Northern District of California. All right. Any questions for Mr. Bagatelle? All right. Okay, then we'll hear from Mr. Sandell. Good morning. May it please the court. Brady and contacts with the Northern District of California were indirect, limited, and closely mapped to those of Red Wing Shoe, and despite our express challenge to do so, the appellants have been unable to find any case where personal jurisdiction was found based on a similar level of foreign contacts. Wait, Mr. Sandell, I'm confused. I thought you were not disputing that there were minimum contacts here, but that the argument was that the reasonableness prong wasn't satisfied. I'm sorry, ma'am. They're a similar level of foreign contacts. Excuse me. You agree that the minimum contacts part of the test is satisfied here, correct? Well, we don't – well, it's our position that Trimble has not established them, but assuming that they are established, per diem has clearly met its burden to show that personal jurisdiction is constitutionally unreasonable. Well, on appeal, you're not disputing the existence of minimum contacts. It's at most a very minor portion of our appeal. We don't concede that. You're not disputing it at all. Well, we pointed to a number of cases where that found in other congregate courts that found demand letters insufficient to satisfy minimum contacts, and we think those are relevant. Where do you argue in your brief that minimum contacts are lacking here? Nowhere specifically, Your Honor. Pardon me? Nowhere specifically, Your Honor. Okay. So on appeal, you're not disputing minimum contacts. Okay, yeah, we don't dispute them. Okay. So let me ask, why should we not, as an in-bank court, overrule Red Wing? How is Red Wing consistent with the Supreme Court law on the reasonableness problem? Well, the Supreme Court mandates a flexible inquiry into whether personal jurisdiction would offend traditional notions of fair play and substantial justice, and the precedent and policy of Red Wing's shoe can guide this court in its assessment of constitutional reasonableness. You know, Red Wing's shoe points out that traditional notions of fair play and substantial justice afford sufficient latitude for a patentee to inform an accuser of his alleged injury, infringement, and to attempt to compromise the claim without risking being held into a far-flung jurisdiction. And so based on that policy, actually Red Wing's shoe tells specifically that that policy squarely invokes the fourth fairness factor. It goes right in to the Supreme Court's four factors. And the other thing that really should be talked about is what is this sufficient latitude? What sufficient latitude is, that in and of itself is a flexible inquiry. So what this court is tasked with doing is really determining whether or not Trimble's actions are within the scope of that sufficient latitude. And in effect what Red Wing's shoe does is it takes that flexible analysis and it looks at some of the factors that are already there and it says, hey, we're in this very unique situation of a declaratory judgment action. Some of these factors counsel against constitutional reasonableness. But why doesn't it depend just as in the Hardy case after Red Wing said that you look at the factors and certainly one has to agree there's a difference between a letter or a phone call and four months of negotiations for a license. And isn't the entire thrust of precedent that these are not bright lines but you look at the facts and decide what's reasonable? And why should this be any different? Well, we certainly do not think that there is a bright line rule. We are not asking that at all. That's a bit of a straw man argument that I believe has been painted on us. We believe we do have to look at the facts. And when you look at the facts here, they very closely align with Red Wing's shoe. And they're very different from Jack Henry. And we specifically challenged the appellants to find a case that are anything close to us. You know, appellants have painted the facts here as, oh, we have been, quote, unquote, harassing, at least, quote, unquote, hassled Trimble for months, but the record simply does not support the spin that Trimble was hassled at all. In the very beginning, Trimble's Colorado counsel said, quote, Trimble is willing to keep negotiating for as long as the talks are productive. And then the very last correspondence before we were blindsided with DJ action in California suggested that the parties' negotiations were continuing and actually included an apology for not getting back to Per Diem soon enough. And that's on page 1328 of the appendix. So, really, all of Per Diem's contacts were part of reciprocal negotiations to compromise the disputed legal claim of patent infringement. Nobody was hassled here. And, you know, Red Wing does stand for the proposition, I mean, perhaps there were more negotiations here, but it stands for the proposition that negotiations to settle claims outside of court is a So, once we dispense with Trimble's notion that Red Wing's shoe is a bright line, wouldn't rule privileging infringement assertions, it becomes very easy to reconcile Red Wing's shoe with the Supreme Court precedent by just considering its policies as some of the, quote, variety of interests in assessing whether jurisdiction would be fair. Is it your position that Red Wing then could be distinguished here? Or is Red Wing, in your view, in point? Red Wing is directly on point with our case. The facts are very, very closely matched. And so, you know, while perhaps Red Wing shoe could have addressed the other factors as well, you know, Red Wing shoe took a flexible analysis at the end of the day. It put its policy into the Supreme Court precedent. It actually already reconciled itself with Supreme Court precedent here. You know, when we talk about the differences in the cases and the facts, I think it's very, I mean, Jack Henry is very stark. The appellants try to say, oh, there are multiple targets in Jack Henry. Yes, there are multiple targets here, only one of which is in California, whereas in Jack Henry, Jack Henry went after 11 targets in this single district. And the other very important thing about Jack Henry is that, you know, Jack, the defendant in Jack Henry really wasn't trying to settle the case in a way, in a way, I mean, when he heard back from Jack Henry who attempted to identify these 11 banks in Texas, he ignored that response and he sent a letter to all 11 banks and actually lied and said that, hey, only your bank is being accused of infringement here. And that is actually sort of where the bad faith comes in. And, you know, contrary to Trimble's assertion, we're not suggesting a rule that good faith comes all or that, quote, in absence of bad faith, patent enforcement activities preclude personal jurisdiction. No one's suggesting that good faith is a mechanical test for constitutional reasonableness. Good faith is not the lodestar, but it is one of the variety of interests that should be considered. And so a patentee's good faith or lack thereof may help inform whether his actions exceed the sufficient latitude that Red Wing talks about. And in Jack Henry, the patentee's actions in lying to 11 banks in the same district, that certainly exceeds the sufficient latitude, in my opinion. And the other thing about Jack Henry, you know, when we talk about the questions of burden, you know, in Jack Henry, the defendant lived domiciled in the next district over. So the state's interest was enormous and covered everybody. And when it talks about burden, you know, we're right next door. That's very close from being, you know, literally across the country. So this lack of good faith was exemplified in Good Henry, and it should be considered as part of the flexible analysis. And the amici also talked about these bulk mail situations where certain NPEs would, you know, litter many, many, many potential defendants in patent lawsuits, you know, just trying to extract some sort of payment for licenses, and they send it to thousands of people. But that is not a good faith situation either. You know, in that situation, the patentee plainly has not done the analysis to determine that he is making a good faith accusation. That is not even being alleged here. You know, when we talk about the facts of this case, you know, there is no credible allegation of bad faith regarding per diems, notifications, and negotiations. Trimble lobs the charge of bad faith in its reply brief at page 13 and also page 15, but only on the grounds that, quote, per diem threatened litigation. But there's no basis for the incorrect proposition that litigation threats are evidence of bad faith. Indeed, at least an implicit threat of litigation is needed to establish subject matter jurisdiction. And accordingly, a litigation threat is baked into every single declaratory judgment action. And so, in our brief, we also highlighted, again, that appellants were unable to identify any authority where personal jurisdiction was found based on a similar level of forum contents. So, in doing so, I'd also like to point out that this court also linked red-winged holding to the first fairness factor, the burden on the defendant, which the Supreme Court has also held to be one of the most important or the most important. It said, quote, to require a defendant to answer in a distant forum when its only context with that forum were efforts to get proper notice of his patent rights would place an undue burden on the defendant. And, you know, as Bristol Myers-Squibb explained, the primary focus of a personal jurisdiction inquiry is the defendant's relationship to the forum state. And here, there is no legitimate dispute that per diem's only context with the forum were attempts to give proper notice of its patent rights and negotiate a compromise of those rights. Simply put, there's nothing else. There's nothing else here. Thus, under Dillon's interpretation of red-winged shoe and actually all interpretations of red-winged shoe, the factor counseled that personal jurisdiction would be unreasonable. So, I'd also like to point out that when red-winged shoe noted that its policy squarely invokes the fourth factor, it also relied on Eighth Circuit law for the proposition that, quote, courts have hesitated to use unsuccessful settlement discussions as contacts for jurisdictional purposes. Why is the burden on the defendant here greater to litigate in Northern District, California rather than in Iowa or Texas? Well, it's... Well, first of all, for, I guess, there's sort of the general burden argument, which I've already mentioned that it's a burden to be taken further away. But it's also, on that note, looking as to the specifics of it, it's because it is a further away jurisdiction, in short. And the other thing, I guess, to note... It depends solely on distance? It's not based solely on distance. I mean, I believe it, you know, the distance and the convenience factors there, while incredibly important to the venue decision, which is no longer part of this appeal, those factors, I believe, are relevant to this. But compared with the general finding of undue burden that is quoted from Zillings, I think it pales in comparison to that. I don't think you really answered my question. I'm sorry. Why is it more burdensome for your client to litigate in Iowa, in the Northern District of California, as opposed to Iowa or Texas? So, it would be... The distance would be one reason for it. And the distance would probably be the main reason there, actually, Your Honor. When we're talking about our burden there, it's further away, longer trips. Of course, all of this came down before the COVID-19 crisis happened, but, you know, that may kind of add to the burden for us as well there. But it's mostly distance, I would say. And Texas, you know, that is our home district, and there really is no burden argument to be made. I'd also want to point out on this point, I hope I answered your question, Your Honor, that Trimble's reply incorrectly implies that Per Diem argued to the D.C. District Court that litigating a related declaratory judgment action in D.C. would be inconvenient and burdensome to Per Diem. And we didn't make that argument. We chiefly argued that the D.C. suit was duplicative to this one and that it was anticipatory given how Trimble filed suit in the middle of continuing negotiations. But, I mean, I admit that we did make a perfunctory argument that D.C. lacked personal jurisdiction, but that was just based on its corporate home being in Texas with respect to general jurisdiction and because with respect to specific jurisdictions, because Per Diem did not direct patent enforcement efforts at the D.C. forum. But the relevant point about Per Diem's jurisdiction argument was not what it omitted, was actually what it omitted. I mean, Per Diem specifically did not argue that D.C. would be inconvenient or burdensome. I mean, Per Diem's sole employee lives and works out of D.C., so we're not going to make that argument. So, unless there are any other questions from the Court, in conclusion, appellee Per Diem requests that this panel affirm the District Court's dismissal of appellant's declaratory judgment action for lack of personal jurisdiction. Are there any more questions for Mr. Sandell? I hear none. All right. Mr. Bagatelle. Thank you, Judge Newman. I'll just make a few quick points in rebuttal. The first point is that Mr. Sandell repeatedly discussed flexibility, but the reality is the District Court didn't exercise any flexibility. It simply addressed one factor, not all factors. And the reality is this Court has referred to the Red Wing Shoe as an inflexible patent-specific rule. Basically, it's turning all on one factor and everything else gets trumped. That is inconsistent with the Supreme Court's jurisprudence, as the District Court, in fact, recognized in a footnote in his opinion. Second of all, Mr. Sandell says we didn't identify any cases, and we've specifically discussed Jack Henry, and I think we've explained why this case is very similar to Jack Henry. Jack Henry was not a bad faith. The Court did not find that there was any lying going on. The only thing it said was that only your bank is being sued, not Jack Henry, which was true. It's also true that Jack Henry didn't have much of a burden argument, but that's also true here. They don't have a significant burden argument because they themselves want to litigate away from home. As I said, that can easily be dealt with via a 1404 motion. There's only a marginal difference between California and Iowa and Texas when you're applying from Washington, D.C. At the end of the day, the burden was on per diem code to make a compelling case that it was unreasonable or unfair to adjudicate in Northern California, and they just didn't do it. The reality is they do say that they can only be sued in the Eastern District of Texas. They moved to dismiss in D.C. for lack of personal jurisdiction. Their position is they can only be sued where they want to be sued. There's no constitutional right to be sued, only in your favorite form. So we ask the Court to reverse. Thank you. Okay. Any more questions? This is about to go. All right. Thanks to both counsels. The case is taken under submission.